**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANASTASIIA SKARBENCHUK, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JOSEPH EDLOW,**<br><br>**Defendant.** | * * * * * * * * * * | **Civil Case No.: SAG-26-03436** |

* * * * * * * * * *

**MEMORANDUM OPINION**

The plaintiffs in this case ("Plaintiffs") were selected for and applied to the 2026 Diversity Visa Program ("DV Program"). ECF 1. On August 30, 2026, Plaintiffs brought suit against Defendant Joseph B. Edlow in his official capacity as the Director of the United States Citizenship and Immigration Services ("USCIS") challenging a December 2025 USCIS policy memorandum which placed a hold on applications filed by DV selectees. *Id.* Plaintiffs filed a Motion for Temporary Restraining Order on September, 1, 2026, seeking an order enjoining USCIS officials from applying the USCIS policy memorandum's hold and compelling USCIS officials to resume adjudicating Plaintiffs' pending applications by September 30, 2026. ECF 5. Defendant opposes the motion, ECF 15, and Plaintiffs filed a reply, ECF 19. This court heard oral arguments from both parties on September 22, 2026. ECF 17. For the reasons explained below, the Motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiffs are forty 2026 Diversity Visa ("DV") selectees, along with select family members (93 individuals total), who are citizens of Ukraine, Nepal, Russia, and Italy. ECF 1 ¶ 2. Between October, 2025 and August, 2026, Plaintiffs applied for adjustment of status under the DV Program

by filing Forms I-485 with USCIS and paying all required fees. *Id.* ¶ 97. A majority of Plaintiffs have also completed the required biometrics and interviews with USCIS. *See* ECF 5-1. Since filing suit, most Plaintiffs have received final decisions on their pending applications, and at least twenty Plaintiffs have received favorable decisions on their applications. ECF 18 at 13–14. As of the filing of Plaintiffs' Reply Brief,

> There are thirteen families in this lawsuit who still do not have final decisions on their pending diversity-based I-485 applications for adjustment of status. One family is still awaiting a biometrics appointment and a scheduled interview. Nine have passed their interviews and have still not been given final decisions. Three have yet to be interviewed.

ECF 19 at 1.

***The Diversity Visa Program***

The DV program makes up to 55,000 immigrant visas available annually. ECF 15. Each fiscal year, the Department of State holds a "lottery" and randomly selects noncitizens from countries with low rates of immigration to the US for the opportunity to apply for a Diversity Visa. *Medani v. Trump*, No. 5:26-CV-06332-EJD, 2026 WL 2547287, at *1 (N.D. Cal. Aug. 28, 2026). Successful DV Program applicants ultimately receive lawful permanent residence and a "green card." *Id.* (citing *Green Card Through the Diversity Immigrant Visa Program*, USCIS, available at https://www.uscis.gov/green-card/green-card-eligibility/green-card-through-the-diversity-immigrant-visa-program). The court in *Medani* summarized the DV Program:

> Selection to the Diversity Immigrant Visa Program alone "does not guarantee that they will receive a visa, only that they will be given an opportunity to apply for one." *See Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 6 (D.D.C. 2022) (citation omitted). Pursuant to 8 U.S.C. § 1151, the number of Diversity Visas issued each fiscal year must not exceed 55,000. 8 U.S.C. § 1151(e) ("The worldwide level of diversity immigrants is equal to 55,000 for each fiscal year."). However, DOS selects more than 55,000 applicants to "ensure that all DV-2026 numbers can be used during fiscal year 2026." U.S. Dep't of State, Visa Bulletin, Vol. XI, No. 8 (November 2025). Once all available Diversity Visas have been issued for the fiscal year, the program ends; otherwise, selectees remain eligible to receive a Diversity Visa until

> September 30 of the fiscal year for which they are selected. 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

*Id.*

Once selected in the lottery, individuals who are physically present in the US under a non-immigrant visa at the time of selection (like all Plaintiffs here), must submit an I-485 Form for "adjustment of status" with USCIS. *Id.* at *2 (citing *I-485, Application to Register Permanent Residence or Adjust Status*, USCIS, available at https://www.uscis.gov/i-485). Applicants must meet all eligibility requirements, pay the applicable fees, provide biometric data to USCIS, and may be required to interview with USCIS. ECF 1 ¶¶ 89–92. USCIS will then approve or deny the individual's application by the Program's deadline. *Id.* ¶¶ 93–96. Outstanding applications expire at the end of the fiscal year, which is September 30, 2026, for this DV Program cycle. *Id.* ¶ 116.

***The Policy Memo***

On December 19, 2025, USCIS issued a policy memorandum, PM-602-0193 ("the Policy Memo")—"Hold and Review of Pending USCIS Adjustment of Status Applications Filed by Aliens Under the Diversity Immigrant Visa Program"—which placed an immediate and indefinite hold on the final adjudication of all pending I-485 Form applications under the DV Program.[1] *Id.* ¶ 98. The Policy Memo placed all adjudication of applications on hold "pending a comprehensive review" but set no date for when such review would occur. ECF 1-1 at 1.

[1] Specifically, the Policy Memo "directs [USCIS] personnel to:

1. Place a hold on all pending adjustment of status, ancillary benefits, and associated waiver applications, for aliens who are applying to adjust to lawful permanent resident status under the Diversity Immigrant Visa (DV) Program pending a comprehensive review; and
2. Conduct a comprehensive review of all policies, procedures, and screening and vetting processes for adjustment of status, ancillary benefits, and associated waiver applications by aliens seeking adjustment of status under the DV Program."

ECF 1-1 at 1 (footnotes omitted).

***Plaintiffs' Claims***

Plaintiffs and their DV Program applications are subject to the Policy Memo's hold. ECF 1 ¶ 99. If Plaintiffs' applications are not adjudicated by September 30, 2026, they will expire and Plaintiffs will have likely lost their only chance to obtain permanent residence through the DV Program. *Id.* ¶ 100.

Plaintiffs assert four claims in the Complaint: a claim for mandamus relief to compel adjudication of their applications (Count I); a claim under the Administrative Procedure Act ("APA") for agency action unlawfully withheld or unreasonably delayed (Count II); a claim to set aside the Policy Memo under APA § 706(2)(A) as arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law (Count III); and a claim to enjoin the Policy Memo as *ultra vires* (Count IV). ECF 1.

In Plaintiffs' TRO motion, they seek an injunction ordering the following relief:

1. Defendant Joseph B. Edlow, and all USCIS officers, employees, and agents acting under him or on his behalf, are **ENJOINED** from applying Policy Memorandum PM-602-0193, or the categorical hold it imposes, to Plaintiffs' pending Forms I-485;
2. Defendant, and all USCIS officers, employees, and agents acting under him or on his behalf, shall resume ordinary, good-faith, individualized adjudication of Plaintiffs' pending Forms I-485, including completion of any remaining biometrics, interviews, requests for evidence, and background or security checks, without applying the Policy Memorandum's categorical hold, no later than September 30, 2026;

ECF 5-3 at 2. Plaintiffs' Reply Brief further clarifies that Plaintiffs seek an order finding that "Defendant has an unfulfilled duty to finish adjudicating Plaintiffs' applications before Sept. 30, 2026." ECF 19 at 1.

## II. LEGAL STANDARD

A TRO or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors

preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant must establish all four elements to prevail. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013). When the Government is the opposing party, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A TRO, much like a preliminary injunction, affords '"an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, No. CV 18 2315, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (recognizing preliminary injunctive relief as an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances") (citation omitted). Since preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicants' right to relief [is] indisputably clear." *Id.* (alteration in original).

## III. DISCUSSION

Plaintiffs' claims and the relief they seek fit into two groups. First, Plaintiffs challenge the Policy Memo itself in Counts III (APA Arbitrary and Capricious) and IV (*Ultra Vires* Action) and seek vacatur of the Policy Memo. ECF 1 ¶¶ 123–50; ECF 5-3 at 2. Second, Plaintiffs allege that USCIS has unreasonably delayed the processing and adjudication of Plaintiffs' individual applications in Counts I (Mandamus) and II (APA Action Unlawfully Withheld or Unreasonably

Delayed) and seek an order compelling USCIS to process their individual applications by September 30, 2026. ECF 1 ¶¶ 151–58; ECF 5-3 at 2. Each group will be addressed in turn.

**a. Challenges to USCIS's Policy Memo (Counts III & IV)**

In Counts III and IV, Plaintiffs allege that the Policy Memo was an unlawful agency action and beyond the statutory authority granted to USCIS. ECF 1 ¶¶ 123–50. They seek an order prohibiting Defendant from applying the Policy Memo. In order to receive this relief, Plaintiffs must demonstrate the four *Winter* factors. Defendant challenges only Plaintiffs' ability to meet the first factor, likelihood of success on the merits. ECF 15 at 5.

**i. Factor One**

"To obtain preliminary injunctive relief, Plaintiffs bear the burden to show that they are likely to succeed on one of their claims." *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 747 (D. Md. 2020). Plaintiffs have made this showing, at least, in regard to their APA arbitrary and capricious claim (Count III).

Under the APA, reviewing courts must "hold unlawful and set aside agency action" that is "arbitrary [and] capricious." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court's review is "deferential," *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), and that "deference is pronounced in immigration matters, where 'decisions regarding the prioritization and processing of visa applications ... implicate weighty concerns of foreign policy and national security.'" *Ivanov*

*v. Trump*, No. CV 26-2272, 2026 WL 2494805, at *10 (D.D.C. Aug. 25, 2026) (alteration in original) (quoting *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024)).

Courts addressing similar claims have found that the USCIS Policy Memo is arbitrary and capricious in violation of the APA and have vacated the Policy Memo. *See Ivanov*, 2026 WL 2494805, at *10–11 (granting summary judgment in favor of plaintiffs); *Medani v. Trump*, No. 5:26-CV-06332, 2026 WL 2547287, at *10–12 (N.D. Cal. Aug. 28, 2026) (finding plaintiffs likely to succeed on the merits of their claim). In those cases, the courts reasoned that USCIS "failed to provide a reasoned explanation to justify the scope of [the Policy Memo]," "there is no indication that ... USCIS considered any relevant alternatives that could have addressed the Government's concerns while also preserving the ordinary operation of Congress's carefully crafted Diversity Immigrant Visa Program," and "there is no indication that ... USCIS considered the substantial reliance interests created by the prior operation of the Diversity Immigrant Visa Program." *Medani*, 2026 WL 2547287, at * 10–11 (agreeing with and adopting the court's analysis in *Ivanov*). The Court agrees with this analysis and also finds Plaintiffs likely to succeed on the merits of their APA arbitrary and capricious claim.[2]

Defendant argues that Plaintiffs cannot show the first factor—likelihood of success on the merits—because Plaintiffs' challenges to the Policy Memo were mooted by another U.S. District Court's vacatur of the Policy Memo and because venue is improper in Maryland. ECF 15 at 5–8. The Court finds Defendant's arguments unavailing or premature.

First, Defendant argues that the recent class certification and grant of preliminary injunctive relief in *Medani v. Trump* mooted Plaintiffs' claims. *Id.* at 7–8. The Court disagrees.

[2] Defendant does not substantively challenge Plaintiffs' APA arbitrary and capricious claim. They make no arguments in their brief to substantiate or justify USCIS's decision-making regarding the Policy Memo. *See* ECF 15.

Even though Plaintiffs here are also members of the class in *Medani* and the *Medani* court vacated the Policy Memo, this Court retains the authority to issue a follow-on injunction. *Whitman-Walker Clinic, Inc v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020) ("[C]ourts routinely grant follow-on injunctions against the Government, even in instances when an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief.") (collecting cases). Further weighing in support of issuing a follow-on injunction is that the *Medani* court did not require adjudication of all of Plaintiffs' DV applications by September 30, 2026. Additionally, the plaintiffs in *Medani* have filed emergency motions to enforce the preliminary injunction granted and have raised concerns about noncompliance by USCIS, suggesting the need for a follow-on injunction. *See Medani v. Trump*, No. 5:26-CV-06332, 2026 WL 2667529 (N.D. Cal. Sept. 10, 2026) (granting in part plaintiffs' emergency motion to enforce the court's preliminary injunction because the court was "concerned that DOS may be dragging its feet to avoid the full impact of court orders before the end of the fiscal year") (internal citations omitted). Accordingly, it is not improper for this Court to consider the Plaintiffs' requested relief.

Second, Defendant argues that Plaintiffs' claims are unlikely to succeed because venue is improper in Maryland but has not yet filed a motion challenging venue. ECF 15 at 5–7. Defendant cites to *Chakrabarti v. U.S. Citizenship & Immigr. Servs.*, in which the court transferred each of the plaintiff's claims to "the federal judicial district for the region" where the USCIS "service center or field office" processing the application was located, and recognized that just because Maryland was a possible venue under 28 U.S.C. § 1391(e), it was not an appropriate venue under 28 U.S.C. § 1404 when the only connection the plaintiffs had to Maryland was that "USCIS headquarters and its Director are located" here. No. CV 21-1945, 2021 WL 4458899, at *4 (D. Md. Sept. 29, 2021); ECF 15 at 5–6.

Plaintiffs contend "venue is proper in this district because Defendant Edlow is director of USCIS, which is located in Camp Springs, Maryland, within Prince George's County, and because a substantial part of the events or omissions giving rise to the claim occurred in this district." ECF 19 at 2. Per 28 U.S.C. § 1391, in an action where the defendant is an "officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States," venue is proper in any judicial district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." Under 28 U.S.C § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Plaintiffs' allegations are likely sufficient to establish venue in Maryland under § 1391. As for § 1404(a), Defendant has not filed a motion to transfer venue. Upon a motion for transfer, venue transfer under § 1404(a) is discretionary, based on an "individualized, case-by-case consideration of convenience and fairness." *United States of America ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "The moving party bears the burden of showing by a preponderance of the evidence that venue would be proper in the alternative forum." *Robb Evans & Assocs. LLC v. Librett, Friedland, & Lieberman, LLP*, No. CV 08-96, 2008 WL 11510289, at *2 (D. Md. July 28, 2008) (citing *Dicken v. United States*, 862 F. Supp. 91, 92 (D. Md. 1994)). In the absence of a motion to transfer venue under § 1404(a) by Defendant and for the purposes of adjudicating the Motion for Temporary Restraining Order, the Court will not determine whether Plaintiffs' claims might be

better suited to another venue and declines to deny Plaintiffs' request for relief on this basis. *See Raloid Corp. v. O'Connor*, No. 1:19-CV-283, 2019 WL 3228566, at *8 n.12 (E.D. Va. July 17, 2019) ("Defendants did not move for a transfer of venue pursuant to § 1404(a), nor did defendants argue such a transfer is warranted here. Accordingly, transfer pursuant to § 1404(a) is not considered here.").

**ii. Factors Two, Three, and Four**

While Defendant does not mount challenges to the other three *Winter* factors, this Court also finds that Plaintiffs have satisfied their burden. As to irreparable harm, Plaintiffs have provided substantial evidence in the form of affidavits attesting to the severe emotional, economic, and personal harms that they and their families will face if the Policy Memo is not enjoined by September 30, 2026, and they lose their opportunity to obtain adjustment-of-status through the DV program. *See* ECF 5-1. Finally, in weighing equities and the public interest, which "merge when the government is a party," *Medani*, 2026 WL 2547287, at *12 (citing *Nken*, 556 U.S. at 435), this Court finds the balance to weigh in Plaintiffs' favor. Vacating the Policy Memo would only require that Defendant carries out his statutorily mandated duties to administer the DV Program, and while Defendant "may be required to carry out these duties on a more expedited schedule, there is no evidence that Defendant[] would be injured by such an order, no less *more* injured than Plaintiffs should no order be issued." *Id.* (emphasis in original).

Accordingly, the Plaintiffs have satisfied the four *Winter* factors with regard to Count III. "'Vacatur is the normal remedy' when a court sets aside unlawful agency action under the APA." *Ivanov*, 2026 WL 2494805, at *16 (quoting *Long Island Power Auth. v. Fed. Energy Regul. Comm'n*, 27 F.4th 705, 717 (D.C. Cir. 2022), and 5 U.S.C. § 706(2)). Therefore, given that this

Court finds Plaintiffs likely to succeed on the merits of their APA arbitrary and capricious claim, the Court will temporarily vacate the Policy Memo pending further litigation.

**b. Challenges to Individual Application Processing Delays (Counts I & II)**

Plaintiffs' two remaining claims allege that USCIS unlawfully withheld or unreasonably delayed their DV Program application adjudications despite having a "clear, non-discretionary, and mandatory duty" to process them by September 30, 2026. ECF 1 ¶¶ 123–50. Plaintiffs seek relief under 5 U.S.C. § 555(b) and § 706(1) and mandamus relief, as well as an order compelling USCIS to resume adjudication of Plaintiffs' DV Program applications by September 30, 2026. ECF 5-3; ECF 19. Again, Plaintiffs must demonstrate the four *Winter* factors to obtain the preliminary injunctive relief they seek, and Defendant only challenges Plaintiffs' ability to meet the first factor, likelihood of success on the merits. ECF 15 at 8–15.

**i. Factor 1**

In cases challenging unreasonable agency delay, "'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)). "Accordingly, when a plaintiff seeks to compel delayed agency action under both statutes, 'those claims merge.'" *Ivanov*, 2026 WL 2494805, at *13 (quoting *Al-Gharawy*, 617 F. Supp. 3d at 17). To succeed under this merged analysis, a plaintiff "must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Sharifishourabi v. Blinken*, No. CV 23-3382, 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (citations omitted).

As an initial matter, of the thirteen Plaintiffs whose applications have still not been adjudicated, nine submitted their applications in August, 2026; one submitted in July, 2026; one

submitted in May, 2026; and one submitted in October, 2025. ECF 19 at 10. Because Plaintiffs have not yet received final adjudication of their DV Program adjustment-of-status applications, their unreasonable delay claims are governed by the six factors set out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Gonzalez v. Cuccinelli*, 985 F.3d 357, 385 (4th Cir. 2021) (quoting *TRAC*, 750 F.2d at 80). "The six considerations are not 'ironclad,' but they do serve as 'useful guidance.'" *United Afr. Org. v. Biden*, 620 F. Supp. 3d 756, 770 (N.D. Ill. 2022) (quoting *TRAC*, 750 F.2d at 80).

Courts applying the *TRAC* factors to delays in processing DV applications have found most factors favor the Government. *See, e.g.*, *Ivanov*, 2026 WL 2494805, at *14; *United Afr. Org.*, 620 F. Supp. 3d at 769–72. To be sure, under the third and fifth factors, Plaintiffs have identified substantial personal and financial interests affected by the Policy Memo and the hold on adjudication of their applications. *See* ECF 5-1 at 1, 11, 14, 16, 26, 31, 36, 39, 42, 48, 56, 58, 59. For example, Plaintiff Pavlenko, who has no home to return to in Ukraine because of the ongoing conflict, stands to lose the opportunity to reunite with her 74-year-old mother who lives in Europe if not granted a DV visa and the benefit of being able to lawfully travel outside the United States. *Id.* at 11–12. These facts and the others in Plaintiffs' affidavits support finding that that the third and fifth factors weigh in favor of Plaintiffs.

However, the Court agrees with the analyses in *Ivanov* and *United African Organization* in finding that remaining factors favor Defendant. The first factor "instructs that the time that agencies take to make decisions must be governed by some 'rule of reason,'" and the second factor instructs courts to consider whether Congress has "provided a timetable or other indication of the speed at which it expects the agency to proceed." *United Afr. Org.*, 620 F. Supp. 3d at 770 (quoting *TRAC*, 750 F.2d at 80). These are "typically considered together," *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020), "and focus on 'the extent of and reasons for the agency delay.'" *Ivanov*, 2026 WL 2494805, at *14 (quoting *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024)). Plaintiffs argue this factor favors them because "immigration benefit applications generally should be processed within 180 days of filing, 8 U.S.C. § 1571(b), and, specific to the DV Program, Congress imposed a hard, non-extendable, fiscal-year deadline, 8 U.S.C. § 1154(a)(1)(I)(ii)(II)." ECF 5 at 12; *see also* ECF 19 at 6–7 (arguing in the alternative that "even if the fiscal year provision of the diversity visa program in the statute is not a strict mandatory timeline per se, it is a normative expectation that the Defendant should strive to meet").

Courts have uniformly rejected Plaintiffs' argument regarding this factor. In *Ivanov*, the court found that the September 30 deadline "is an *eligibility* cutoff, not a timetable requiring the agencies to complete adjudication by a specified date." *Ivanov*, 2026 WL 2494805, at *14 (emphasis in original); *see also Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 17 (D.D.C. 2022) (noting the DV statutory framework does not provide a "speed at which each individual application must be adjudicated"). Similarly, in *United African Organization*, the court found "that the statute setting the fiscal-year eligibility limit," § 1154(a)(1)(I)(ii)(II), "was just that—a limit on *eligibility*, not a deadline for administrative action." 620 F. Supp. 3d at 769 (emphasis in original) (citing *Shahi v. U.S. Dep't of State*, 33 F.4th 927, 929 (7th Cir. 2022)). Further, contrary to Plaintiffs'

arguments, the court found that "no rule of reason require[d] adjudications at a pace that would guarantee issuance of the full fiscal-year allotment of diversity visas." *Id.* at 770. The Court agrees with these prior analyses and finds no binding obligation on USCIS to adjudicate Plaintiffs' applications by the September 30 deadline.

The fourth factor, which requires the court to consider "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, also favors Defendant. As the court in *Ivanov* explained:

> "This factor often carries significant weight," and relief that would "simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Ordering the agencies to adjudicate the named plaintiffs first would "inevitably entail a judicial reordering of the Department's priorities." *Motevali v. Rubio*, 2025 WL 885116, at *8 (D.D.C. Mar. 21, 2025).

2026 WL 2494805, at *14. Here too, an order from this Court that would place these Plaintiffs at the front of the (no doubt lengthy) line of DV Program processing applicants would be unfair to other applicants, especially in light of the fixed September 30 deadline.

Finally, the sixth factor is whether there is "any impropriety lurking behind agency lassitude," but such a finding is not required "in order to hold that agency action is unreasonably delayed." *TRAC*, 750 750 F.2d at 80. Plaintiffs allege impropriety because "Defendant continues to apply, to Plaintiffs, the identical categorical hold that a coordinate federal court has already adjudicated unlawful as to similarly situated selectees." ECF 5 at 13; *see also* ECF 19 at 12. Defendant counters by stating that he has "publicly announced that it is not applying the policy at issue." ECF 15 at 14. In fact, since the filing of this suit, the applications of twenty-seven Plaintiffs have been processed by USCIS, ECF 19 at 1, and at least twenty of the Plaintiffs "have received their green cards." ECF 18 at 13. Regardless of whether there was impropriety in Defendant's

decision to halt all DV Program application processing, at this time Defendant has resumed processing applications. This Court therefore finds this factor to be "neutral at best." *Ivanov*, 2026 WL 2494805, at *14 ("But the plaintiffs fail to cite to any 'factual content that allows the court to draw the reasonable inference of any bad faith or impropriety that would sway this factor in Plaintiffs' favor.'") (quoting *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 14 (D.D.C. 2021)).

As most of the *TRAC* factors favor Defendant, Plaintiffs have failed to establish likelihood of success on the merits for their claims for unlawful withholding, unreasonable delay, or mandamus. Accordingly, the Court denies Plaintiffs' requests for an order compelling Defendant to process their applications by the September 30 deadline.

However, like other courts addressing this issue, in addition to vacating the Policy Memo, this Court will issue an order requiring Defendant to resume good-faith processing of DV Program applications through the September 30 deadline in the ordinary course. *See Ivanov*, 2026 WL 2494805, at *14 ("[R]ather than compel adjudication on a court-imposed timetable or reorder the agencies' priorities, the Court may enjoin the agencies from applying the unlawful policies to plaintiffs' applications and require any resulting processing to proceed in the ordinary course."); *Medani*, 2026 WL 2547287, at *13 (vacating the Policy Memo and "likewise order[ing] USCIS to resume ordinary adjudication of Plaintiffs' pending adjustment of status applications without applying the USCIS Pause").

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Temporary Restraining Order, ECF 5, is granted in part and denied in part. A separate Order follows.

Dated: September 25, 2026

/s/
Stephanie A. Gallagher
United States District Judge